# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Joseph G. Rosania, Jr.

| | |
|---|---|
| In re:<br><br>AVI SCHWALB,<br>SSN: xxx-xx-0747,<br><br>Debtor. | Case No. 25-12666-JGR<br>Chapter 11 |

## ORDER DENYING MOTIONS FOR STAY PENDING APPEAL

THIS MATTER is before the Court on the Emergency Motion for Stay Pending Appeal filed by the Debtor Avi Schwalb on November 24, 2025 (Doc. 313) and his Motion for Stay Pending Appeal filed November 25, 2025 (Doc. 314) (collectively referred to as "Motion") pending the appeal of this Court's October 30, 2025 Order Converting Case to Chapter 7 (Doc. 269). On December 1, 2025, responses to the Motion were filed by Industrial Alliance Insurance and Financial Services, Inc. (Doc. 319) and the chapter 7 trustee (Doc. 320). Jeffrey Swanson also filed a joinder to the chapter 7 trustee's objection (Doc. 321). The Court, having reviewed the Motion,

DOES FIND the Motion was filed with the Bankruptcy Court pursuant to Fed.R.Bankr.P. 8007(a) claiming the stay is necessary to preserve the estate and prevent irreversible harm during the pendency of the Debtor's appeal. The Debtor argues without a stay, the chapter 7 trustee may liquidate assets before the appeal is heard, rendering the appeal moot.

## BACKGROUND

The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on May 2, 2025. At the time the case was filed, the Debtor was a named defendant in multiple civil actions arising from real estate transactions, construction projects, and real estate management activities. The Debtor was also indicted by the Attorney General for the State of Colorado on 30 felony counts, including theft and organized crime, which the Debtor vehemently denies. The criminal trial is scheduled for February 2026.

The Debtor claims the bankruptcy case was filed to obtain the automatic stay preven the continuation of the state court litigation and centralize the disputes into one forum.

As the case progressed, the Bankruptcy Court granted relief from stay for certain creditors to continue the state court litigation. The issues involved state law, the Plaintiffs were entitled to a jury trial, and the civil actions included non-debtor third party defendants.

On September 15, 2025, the Debtor filed a motion to dismiss his chapter 11 bankruptcy case. He alleged there was no longer any purpose served by continuing in bankruptcy as creditors were likely to obtain relief to pursue state court actions and it was doubtful that he would succeed in an adversary proceeding seeking to extend the benefits of the automatic stay to non-debtor entities in which he had an interest.

The Debtor's motion to dismiss drew objections from the Official Committee of Unsecured Creditors; Jeffrey Swanson; Uzi Berger; Fannie Mae; John Doe, Jane Roe; Brianna Tanner, Douglas Tanner; Benjamin Davidson, Karen Davidson; and David Amster-Olszweki, Kirby Lance Jones. In addition, Fannie Mae filed a motion to convert the case to chapter 7.

On October 29, 2025, the Court conducted a preliminary hearing on the motion to dismiss the responses and the motion to convert pursuant to L.B.R. 2081-3(c). The Debtor and the objecting parties made offers of proof as to what the evidence would show at an evidentiary hearing. The Debtor, through counsel, represented to the Court that he did not want the Court to conduct an evidentiary hearing because he would likely refuse to answer any questions based upon his rights under the Fifth Amendment to the United States Constitution.

The objecting creditors adamantly opposed dismissal of the chapter 11 case, pointing to numerous discrepancies in the Debtor's disclosures, listing of assets, and reporting to the Court. The creditors emphasized the need to appoint an independent party to take control, safeguard, and prevent dissipation of the Debtor's remaining assets. The creditors argued a chapter 7 trustee would serve as a fiduciary for all creditors and investigate: (i) whether there are potential avoidance actions against family members or other insiders of the debtor, including transfers of Debtor's 100% interest in 27 limited liability companies to a holding company on the eve of bankruptcy; (ii) the value of a significant number of real properties owned directly or indirectly by the Debtor; (iii) the use of funds received by an insider entity, PHS Rent, LLC, in connection with the management of the real properties; and (iv) inconsistencies between the Monthly Operating Reports, Schedules, and Statement of Financial Affairs. In addition, they asserted conversion to a chapter 7 bankruptcy case would allow for a review of claims asserted against the Debtor in an impartial fashion, facilitate the ordinary liquidation of assets, and prevent a chaotic race to the courthouse.

The Debtor filed his motion to dismiss under 11 U.S.C. § 1112(b)(1), which provides that "after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate . . . ." On October 30, 2025, the Court issued an oral ruling in open court. The Court analyzed the facts to determine whether dismissal or conversion was appropriate in the case and determined that all of the salient factors favored conversion. No creditors expressed support for dismissal, including creditors holding prepetition judgment liens. The Court determined that conversion would avoid a chaotic race to the courthouse and allow for the equitable distribution of the Debtor's

2

nonexempt assets to his creditors. The allegations raised at the hearing pointed to numerous issues in need of investigation by a fiduciary. Conversion to chapter 7 would centralize the control and administration of estate property. Finally, the Debtor who sought bankruptcy protection was the only party that would benefit from dismissal.

## ANALYSIS

The Court considers four factors when analyzing a stay:

(1) a strong likelihood of success on appeal;
(2) the threat of irreparable harm if the stay or injunction is not granted;
(3) the absence of harm to opposing parties if the stay or injunction is granted; and
(4) that the public interest supports a stay.

*United States v. Peck*, Nos. 23-4000, 23-4038, 2023 U.S. App. LEXIS 9782, at *2 (10th Cir. Apr. 17, 2023)(citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the court's] discretion." 556 U.S. at 433-34.

Debtor is acting as a pro se litigant and the Court has liberally construed and held the Debtor to a less stringent standard than formal pleadings drafted by lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520-521, 30 L. Ed. 652, 92 S. Ct. 594 (1972)

### (1) A Strong Likelihood of Success on Appeal

The Debtor argues conversion was not proper under 11 U.S.C. § 1112(b) asserting there was no cause because: Debtor did not act in bad faith; there was no continuing loss; no gross mismanagement; and multiple secured creditors supported chapter 11. In the Debtor's second motion, he raises six arguments that the appeal is likely to succeed on the merits.

A.) Citing *In re Gateway Access Solutions*, 374 B.R. 556 (Bankr. M.D. Pa. 2007), the Debtor argues the Court failed to identify any cause under 11 U.S.C. § 1112(b). *In re Gateway Access Solutions* involved creditors filing a Motion to Convert opposed by the Debtor, who was seeking to continue with the chapter 11 case. The creditor's motion was granted, and the case was converted to chapter 7.

Here, the Debtor is not seeking to continue with a chapter 11 bankruptcy reorganization. Rather, the Debtor seeks dismissal of the case and to regain control of assets that became property of the estate.

The oral ruling contained specific findings that conversion of the bankruptcy case to chapter 7 was in the best interest of creditors and the estate.

B.) The Minute Order Converting the Case contains no findings or conclusions under Fed.R.Bankr.P. 7052.

3

The Debtor asserts failure to issue findings is reversible error, citing *In re Plaza de Diego Shopping Ctr.*, 911 F.3d 820 (1st Cir. 2018).  This case does not exist.  A similarly named case, *In re Plaza de Diego Shopping Ctr.*, 911 F.2d 820 (1st Cir. 1990) involved the reversal of an order appointing a chapter 11 trustee where the district court disregarded the trustee nominated by the Office of the United States Trustee and independently appointed a different chapter 11 trustee. It does not appear to be relevant.

The Debtor is mistaken in his belief that no findings or conclusions of law were issued.  The Minute Order Converting the Case incorporated the oral ruling, which contained findings of fact and conclusions of law.

C.) The Debtor argues that secured creditors supported rehabilitation under 11 U.S.C. § 1112(b)(2).  The Debtor claims that certain secured creditors supported continuation of the chapter 11 case.

This argument lacks merit.  The Debtor is not seeking a continuation of the chapter 11 case.  He is seeking dismissal.  No creditors, secured or unsecured, appeared at the hearing in support of the Debtor's motion to dismiss.  No creditors have filed a motion seeking to continue the chapter 11 process.  No creditors, secured or unsecured, appeared at the hearing on dismissal seeking a continuation of the chapter 11 process.

Moreover, the Debtor has not filed a plan of reorganization and made no offer of proof at the hearing to support a finding that there is a reasonable likelihood that a plan would be confirmed in a reasonable period of time as required under 11 U.S.C. § 1112(b)(2).

D.) Citing *In re Orbit Petroleum*, 395 B.R. 145 (Bankr. D.N.M. 2008), the Debtor contends that there is no evidence of operating loss preventing conversion to chapter 7. *Orbit Petroleum* involved a case where the debtor had proposed a 100% repayment plan and the court found despite continuing losses, the debtor should be afforded the opportunity to pursue confirmation of the plan.  Again, the argument is misplaced as the Debtor is seeking dismissal of the chapter 11 case not continuation of the chapter 11 reorganization process.

E.) The Debtor claims that most of the unsecured creditors had improper motives in seeking conversion of the case. Conversion was sought for "punitive motives, not economic ones." This argument was not raised by the Debtor in his motion to dismiss or at the hearing.  This conclusory statement is unpersuasive as the offers of proof presented at the hearing established conversion was in the best interest of the creditors and the estate and would prevent the dissipation of assets.  Moreover, over $61 million of claims have been filed in this case.

The Debtor states "[b]ankruptcy may not be as a weapon for punishment."  The cases cited are inapposite. *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825 (9th Cir. 1994) involved the dismissal of a chapter 11 case for bad faith where the case was filed when

4

the debtor operated no business and had assets sufficient to pay the debt in question and to post bond while an appeal of the judgment was being pursued. *Marshall v. Marshall (In re Marshall)*, 403 B.R. 668 affirmed the denial of motions brought by an adverse creditor to recuse the judge, dismiss the case for bad faith, and to reject the confirmation of the debtors' plan of reorganization.

F.) Lastly, the Debtor argues a stay is necessary to prevent the chapter 7 trustee from interfering with PHS Rent LLC. PHS Rent LLC manages the bankruptcy estate's real property and the Debtor's 50% membership interest in the LLC became property of the bankruptcy estate when he filed the chapter 11 bankruptcy case. Upon conversion, the chapter 7 trustee holds and controls the membership interest in PHS Rent LLC and is entitled to interact with the company to investigate the financial performance of the estate's real property. To the extent the Debtor argues the chapter 7 trustee actions with PHS Rent LLC are improper, the entity can exercise its legal rights as necessary.

The Debtor has failed to establish any likelihood of success on appeal.

**(2) The Threat of Irreparable Harm if the Stay or Injunction is Not Granted;**

The Debtor submits he will suffer irreparable harm as a result of financial hardship imposed by: The chapter 7 trustee replacing management (presumably in LLC's in which the Debtor held membership interests); his loss of rents and control; interference with LLC operations; asset deterioration; and the prospect of the appeal becoming equitably moot.

The Debtor's argument is unavailing. At the hearing on conversion, the Debtor argued there was no equity in the real properties so conversion would be futile. The chapter 7 trustee sought and obtained approval to operate the income generating real estate business on a short-term basis pursuant to 11 U.S.C. § 704. Operation of the business, subject to the supervision of the chapter 7 trustee, will provide transparency and accountability in connection with the receipt of revenues and payment of expenses and will allow for the upkeep and preservation of the real estate.

The Debtor's argument highlights the creditors' concerns expressed at the hearing that the Debtor sought bankruptcy protection as a litigation tactic, not acting in good faith, and that the Debtor is only concerned with maintaining his ability to control and manipulate the assets for his own benefit. Again, it must be emphasized that the Debtor seeks dismissal of the chapter 11 case, not an opportunity to proceed with a proposed reorganization.

*In re Charter Co.,* 829 F.2d 1054 (11th Cir. 1987), cited by the Debtor for the proposition that the appeal may become moot in the absence of a stay, is distinguishable. That case concerned an appeal of sale order. When the sale closed, the appeal became moot.

*Lutin v. United States Bankr. Court (In re Advanced Mining Sys.)*, 173 B.R. 467 (S.D.N.Y. 1994) stayed a bankruptcy case to allow an appeal of the denial of an

5

administrative expense claim to proceed. Absent the stay, distributions would have been made to the holders of other allowed claims dissipating the funds held by the bankruptcy estate.

Here, the liquidation of assets in a chapter 7 bankruptcy case is on orderly process with sales of properties and distributions to secured and unsecured subject to notice and hearing in the future. There is no threat of immediate or irreparable harm.

### (3) The Absence of Harm to Opposing Parties if the Stay or Injunction is Granted

The Debtor argues the granting of the stay would not harm secured creditors are fully protected, supported Chapter 11 continuation, and remained adequately collateralized.

No secured creditors appeared at the hearing in support of the Debtor's motion to dismiss. At the hearing, the Debtor argued that conversion to chapter 7 would not be beneficial to creditors of the estate because no equity existed in the real estate in direct contradiction of the argument raised in the motion for stay.

The Court takes judicial notice of the related chapter 11 cases filed by 1575 Galena LLC, Case No. 25-13853-JGR, and 8 Buildings LLC, Case No. 25-14224-JGR.

The Statement of Financial Affairs filed by 1575 Galena LLC disclosed distributions made to the Debtor and his wife, Shosh Schwalb, in the amount of $294,399 during the one year prior to the bankruptcy filing while the secured creditor went unpaid for the six months prior to the bankruptcy filing, necessitating the filing of a state court receivership action.

Similarly, the Statement of Financial Affairs filed in the 8 Buildings LLC case disclosed distributions made to the Debtor and his wife in the amount of $335,455 in the one year prior to the bankruptcy filing while the secured creditor also was forced to protect its rights through state court receivership litigation.

The secured creditor, Industrial Alliance Insurance and Financial Services, Inc., filed a response to the Motion indicating that contrary to the Debtor's allegation that "Industrial Alliance foreclosed on eight properties valued at ~$7 million, satisfying the secured debt," foreclosure sales have been scheduled to occur in January 2026. In the response, the secured creditor reserves its rights to assert unsecured deficiency claims and has no knowledge how the valuation of $7 million was obtained.

The Debtor argues unsecured creditors will not be harmed by the imposition of a stay because the claims are unliquidated, no judgments have been obtained, and unsecured creditors would suffer no present prejudice from a temporary pause.

The unsupported conclusory statements ignore the fact that the administration of a chapter 7 bankruptcy case provides a centralized mechanism for the allowance of claims, and the fact that unsecured creditors would be prejudiced by the delay in the liquidation of assets.

The Debtor's Motion does not offer to post a bond to prevent potential harm that may result from a delay in the liquidation of the assets.

The reality of this case is the Debtor wants to remain in control of the real properties and the rents generated therefrom. The effect of granting the stay would extend the benefits of bankruptcy protection to the Debtor without bankruptcy supervision. Thus, the Debtor's creditors would be harmed by the granting of a stay.

**(4) The Public Interest Supports a Stay**

The Debtor claims the public interest favors: The correct application of 11 U.S.C. § 1112(b); allows for proper appellate review; prevents premature liquidation of assets; preserves a functioning rental business; and ensures chapter 7 trustees do not interfere with non-debtors.

The argument is unpersuasive and merely rehashes arguments discussed and rejected above. The Debtor has failed to establish that the public interest supports a stay.

Therefore, for the above reasons, Debtor's Emergency Motion for Stay Pending Appeal and Motion for Stay Pending Appeal are hereby DENIED.

Dated this  2nd  day of  December , 2025.

BY THE COURT:

_____
Joseph G. Rosania, Jr.
United States Bankruptcy Judge